UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES | : | |
| | : | |
| v. | : | Case No. 3:13-CR-226(RNC) |
| | : | |
| DANIEL CARPENTER | : | |

RULING AND ORDER

Defendant Daniel Carpenter is charged in a superceding indictment with mail and wire fraud, money laundering and conspiracy to commit these offenses based on his alleged participation in a fraudulent scheme involving stranger-originated life insurance ("STOLI"). See United States v. Binday, 804 F.3d 558 (2d Cir. 2015) (affirming convictions of insurance brokers who participated in STOLI scheme). Pending are two motions filed by the defendant relating to searches of business premises in 2011 and 2010, which resulted in the seizure of a large number of documents. He contends that in each instance the search warrant applications were tainted by false and misleading statements, the warrants failed to describe the items to be seized with sufficient particularity and the warrants were overbroad. He also complains about the manner in which the searches were conducted and the length of time documents have been retained. He seeks a suppression order preventing use of the documents at any trial in this case and an order requiring the documents to be returned to him. The Government has submitted a comprehensive memorandum arguing that the defendant lacks standing, his challenges to the warrants lack merit and his

other complaints do not entitle him to relief.  For reasons that follow, I conclude that the defendant has standing to challenge the validity of the warrants for the searches that were done at the main location in question.  I also conclude, however, that the documents should not be suppressed or returned and therefore deny both motions.

I.   Background

Carpenter has been the target of two separate federal criminal investigations - one conducted by agents of the Department of Labor under the supervision of the United States Attorney's office in Connecticut; the other conducted by agents of the Internal Revenue Service under the supervision of the United States Attorney's Office in the Eastern District of Wisconsin.  The DOL investigation concerns the STOLI fraud alleged in the superceding indictment, which involves Charter Oak Trust ("COT") and related entities in which Carpenter has an interest.  The IRS investigation concerns abusive section 419 welfare benefit plans involving Nova Benefit Plans LLC (also known as Benistar) and related entities in which he also has an interest.  At pertinent times, COT, Nova and related entities had offices at 100 Grist Mill Road in Simsbury, where Carpenter had his main office, and another location in Stamford.

The motions to suppress relate to searches conducted pursuant to a number of warrants: a 2011 search by DOL agents of

offices at 100 Grist Mill Road and the location in Stamford for documents relating to the STOLI fraud; and a 2010 search by IRS agents of offices at 100 Grist Mill Road for documents relating to the promotion and administration of abusive section 419 welfare benefit plans.  The 2011 search included copying of materials held by the IRS as a result of the 2010 search, making the 2010 search relevant to the present criminal case.  The warrants at issue authorized the seizure of various categories of business records.  The 2011 warrant for 100 Grist Mill Road and the Stamford location was issued on the basis of an affidavit signed by DOL Special Agent Lynn E. Allen.  See Ex. 8 to Gov't's Opp'n (ECF No. 97-2) at 122.  The 2010 warrant for 100 Grist Mill Road was issued based on an affidavit signed by IRS Special Agent Shaun Schrader.  See Ex. 2 to Def.'s Memo. (ECF No. 83-2).  In the course of the searches, vast quantities of business records were seized in both hard copy and electronic form.

II.  Discussion

    1.  Standing

The first issue that must be considered is whether the defendant has standing under the Fourth Amendment.  The defendant has standing only if he had a reasonable expectation of privacy in the areas searched or the items seized.  See Rakas v. Illinois, 439 U.S. 128, 143 (1978).  Such a reasonable expectation can exist in a business office with regard to

business records.  See Mancusi v. DeForte, 392 U.S. 364, 367-70 (1968) (union official who shared office with several other union officials had standing to challenge state officials' seizure of records in his custody at the time they were seized).  In most cases, however, an employee's reasonable expectation of privacy is limited to his own workspace, or other areas directly connected with his own activities and responsibilities, and his own papers or papers in his custody.  See United States v. Chuang, 897 F.2d 646, 649-50 (2d Cir. 1990) (bank officer had no expectation of privacy in another's workspace, notwithstanding his operational control over the bank); United States v. Britt, 508 F.2d 1052, 1055 (5th Cir. 1975) (president of corporation lacked standing to challenge seizure of business records from storage area); Wayne R. LaFave, 6 Search & Seizure § 11.3(d) (5th ed.).  Similarly, with regard to office computers, an individual's reasonable expectation of privacy ordinarily does not extend beyond his own computer.  See Leventhal v. Knapek, 266 F.3d 64, 73 (2d Cir. 2001) (state agency employee who had exclusive use of his office computer had standing to challenge after-hours search of computer to look for personal files); United States v. Costin, No. 3:05CR38(JCH), 2006 WL 2522377, at*4-*6 (D. Conn. July 31, 2006) (expectation of privacy did not extend to computers outside defendant's office); United States v. Triumph Capital Grp., Inc., 211 F.R.D. 31, 54 (D. Conn. 2002)

4

(corporate officer lacked standing to challenge search of another's computer).

The government contends that the defendant has failed to meet his burden of presenting competent evidence showing that he has standing.  A defendant seeking to challenge a search of corporate offices usually must submit an affidavit showing that he had a reasonable expectation of privacy in the area searched or items seized.  See United States v. Tranquillo, 606 F. Supp. 2d 370, 378 (S.D.N.Y. 2009) ("As a preliminary matter, [defendant] has not put forth the foregoing facts - or, indeed, *any* facts relevant and probative of his privacy interest in the two A & D Carting computers - in a sworn affidavit."); United States v. Sorcher, No. 05 Cr. 799, 2007 WL 1160099, at *8 (S.D.N.Y. Apr. 18, 2007) ("Indeed, the record contains no affidavits from defendants asserting their possessory or proprietary interest in the documents.").  No affidavit has been submitted in this case, as the Government emphasizes.  Instead, the defendant offers only unsworn statements of counsel.[1]

---

[1] The defendant's memorandum responding to the government's opposition to the motions to suppress contains the following representations of counsel:

"Not only did Mr. Carpenter's company own the building [in Simsbury] where both raids took place, he had a separate suite of office rooms in the back of the building that were not only private but separated from the other businesses there by a large partition that no entered unless they had business with Mr. Carpenter."  Def.'s Reply to Gov't's Opp'n (ECF No. 113) at 22.

The Government submits that the absence of an affidavit should be fatal to the plaintiff's motions to suppress because he denies having control over the offices where the searches occurred, claiming that he "stepped down from all Benistar-related entities in January of 2004, and was never an officer or signatory for Nova or its affiliates."  Gov't's Opp'n (ECF No. 97) at 23.  Given this denial, the Government argues, the defendant must do more than simply assert through counsel that he had a reasonable expectation of privacy.  See Tranquillo, 606 F. Supp. 2d at 378 (finding it "implausible" that defendant had a privacy interest in computers when he claimed he "was never an owner, manager or supervisor of [the enterprise]" and "had no role in the [alleged actions]").

Though the absence of an affidavit is somewhat troubling in this case, it is not dispositive, at least with regard to the searches at 100 Grist Mill Road.  Even without an affidavit of the defendant (or other competent witness), the record permits a

---

"Mr. Carpenter had an inner sanctum where he had his own computer where he did his own private email.  The agents took Mr. Carpenter's personal cell phones and tablet as he was walked from one side of the building, where all of the Benistar employees were being held in his inner office."  Id. at 23

"Furthermore, the Search Warrant Inventory had detailed records of documents taken from Mr. Carpenter's personal conference room, his personal credenza where his personal tax returns and personal insurance policies were taken from."  Id.

finding that the agents who conducted the searches at 100 Grist

Mill Road searched offices used by the defendant himself and

seized documents that were either prepared by him or were in his

custody or both.  In particular, the inventory of items taken in

the 2010 search of 100 Grist Mill Road shows that documents were

seized from places described as "Daniel Carpenter Office 1" and

"Daniel Carpenter Office 2," including in some instances the

defendant's correspondence and handwritten notes.[2]  In addition,

---

[2] <u>See</u> Ex. 3 to Def.'s Memo. (ECF No. 83-3).

The 2010 inventory lists the following documents taken from
"Daniel Carpenter Office 1": control item # A80 (list of
entities); # A84 (memos, organizational charts, IRS
correspondence, handwritten notes, bank statements); # A97 (IRS
policies, Benistar Financial statements); # A115 (correspondence,
handwritten notes, Benistar client files); #A116 (bank account
information, 419 plan research and notes, etc.); #A128 (letter
re: legal opinion, 419 abusive tax shelter); #A129 (mock trial
CDs); # B60 (Carpenter's testimony for Treasury re: 419A,
Professional's Guide to 419 Plans, Benistar 419 plan); # B102
(letter re: tax deductability and flowcharts of 419 plans); #
B103 (419 client correspondence); # B116 (cassette of Carpenter
discussing 419 plans); # B117 (list of bank accounts by company,
IRS revenue rulings re: 419 plans, applications for extensions to
file, client records); # B119 (articles re: 419 plans, etc.); #
B120 (various emails re: 419 plans, 419 client list); # B122
(Grist Mill 419, Benistar monthly statements, draft tax returns);
# B123 (various docs re: client audit); # B124 (various emails
re: 419s); # B128 (Midland summons, Benistar 419 list of active
companies); # B139 (legal motions); # B144 (miscellaneous legal
document); and # C95 (binder describing tax shelters).

The 2010 inventory lists the following items taken from "Daniel
Carpenter Office 2": control # A118 (Nova tax return, memos,
spread sheets, internet research documents, Benistar bank
statements, Grist Mill financials, tax benefit rule cases);
# B142 (legal correspondence and motions); and # C126 (email,
legal correspondence re: Nova).

it appears that every computer on the premises was imaged in 2010, and the inventory shows that two of those computers were taken from offices used by the defendant.[3]  The inventory for the 2011 search is less clear in these respects but in light of the 2010 inventory, the record is sufficient to support a reasonable inference that the 2011 search of the Grist Mill Road location also encompassed the defendant's own offices and computers.

Accordingly, I conclude that the defendant should be deemed to have standing to challenge the validity of the warrants for the searches of 100 Grist Mill Road in 2011 and 2010.

    2.  <u>Particularity and Overbreadth</u>

The defendant devotes most of his briefing to arguments concerning particularity and overbreadth.  Careful review of the warrants and supporting applications discloses no constitutional violation.

    a.  <u>Particularity</u>

To be valid, a warrant must be sufficiently particularized. <u>United States v. George</u>, 975 F.2d 72, 75 (2d Cir. 1992).  That

---

Notably, the inventory reflects that the vast majority of items were taken from other offices, storage rooms and cubicles.

[3] The inventory for the 2010 search shows that a computer was taken from "Daniel Carpenter Office 1", <u>see</u> Ex. 3 to Def.'s Memo. (ECF No. 83-3), control # B79 (image of hard drive in Dell HF95K11) and another was taken from "Daniel Carpenter Office 2", <u>see</u> <u>id.</u>, control # B78 (image of hard drive in Dell GG7Z551).

is, it must "enable the executing officer to ascertain and identify with reasonable certainty those items that the magistrate has authorized him to seize." Id.  Other documents, including affidavits submitted to a magistrate judge to demonstrate probable cause, can particularize a warrant only if attached and incorporated into the warrant by reference.  See United States v. Rosa, 626 F.3d 56, 64 (2d Cir. 2010) ("[W]e may no longer reply on unincorporated, unattached supporting documents to cure an otherwise defective search warrant.").

Within the Second Circuit, "there is no settled formula for determining whether a warrant lacks particularity." United States v. Zemlyansky, 945 F. Supp. 2d 438, 453 (S.D.N.Y. 2013). There are, however, two factors, which "above others, tend to define a warrant's insufficient particularity.  First, warrants are generally found to be insufficiently particular where nothing on the face of the warrant tells the searching officers for what crime the search is being undertaken. . . . Second, warrants will frequently lack particularity where they include a general, catch-all paragraph or provision, often one authorizing the seizure of 'any or all records' of a particular type." United States v. Vilar, No. 05 Cr. 621, 2007 WL 1075041, at *22 (S.D.N.Y. Apr. 4, 2007) (internal quotation marks and citations omitted).

The warrants at issue here are sufficiently particularized.

9

The face of the 2010 warrant describes the place to be searched and explains that the search is for "fruits, evidence and/or instrumentalities concerning violations of Title 18 United States Code, Section 371 and Title 27 United States Code, Section 7206(2)." Ex. A to Def.'s Memo. (ECF No. 83-1). Attachment 6 to the warrant further describes the items to be seized. See Ex. 1 to Govt.'s Memo. (ECF No. 97-2). In contrast to a general warrant, Attachment 6 limits the search to documents that were maintained by or on behalf of an entity or trust that "promote[d], administer[ed], or utilize[d] 419 plans," between 2004 and 2010; the documents are further subdivided into several enumerated categories. See id.; cf. Zemlyansky, 945 F. Supp. 2d at 459 ("At bottom, missing from all of these categories—and from the warrant in general—are any instructions to the officers to search for and seize records related to the five modality clinics at the center of the alleged conspiracy in question, related to particular suspects in the case, limited to the time period of the suspected conspiracy, related to the crimes alleged, or any other limits.").

The 2011 warrant does not include a description of the place to be searched or the items to be seized, but it does incorporate by reference Attachments B and D, which include this information. Ex. 1 to Def.'s Memo. (ECF No. 81-1); Ex. 6 to Govt.'s Memo. (ECF No. 97-2). Attachment D limits the search to certain

10

documents related to certain individuals and entities between
2006 and 2011.  See Ex. 6 to Govt.'s Memo. (ECF. No. 97-2).  The
documents are subdivided into various categories, including
copies of federal and state income tax returns related to certain
individuals, and records of income and expenses relating to
certain businesses.  See id.

In both instances, the warrants are "sufficiently specific
to permit the rational exercise of judgment [by the executing
officers] in selecting what items to seize."  United States v.
LaChance, 788 F.2d 856, 874 (2d Cir. 1986) (quoting United States
v. Vargas, 621 F.2d 54, 56 (2d Cir. 1980)) (internal quotation
marks omitted).[4]

      b.  Overbreadth

Overbreadth refers to whether there is sufficient probable
cause to justify the scope of the search.  United States v.
Hernandez, No. 09 CR 625 (HB), 2010 WL 26544, at *8 (S.D.N.Y.

---

[4] The defendant contends that the warrants are "materially
defective" because "there was no affidavit supporting the search
warrant attached."  Def.'s Memo. (ECF No. 81) at 1; Def.'s Memo.
(ECF No. 83) at 1.  Because the warrants at issue, together with
the accompanying attachments, are sufficiently particularized,
any failure to attach the search warrant affidavits does not
render the warrants defective.

The defendant also argues that the amount of material seized
shows that the warrants lacked sufficient particularity.  Def.'s
Memo. (ECF No. 81) at 16. However, as the Government notes,
"[t]he material taken was a minuscule fraction of the total
number of documents present at the subject offices."  Gov't's
Opp'n (ECF No. 97) at 18.

11

Jan. 6, 2010).  "[P]robable cause to search is demonstrated where the totality of circumstances indicates a 'fair probability that contraband or evidence of a crime will be found in a particular place.'"  Walczyk v. Rio, 496 F.3d 139, 156 (2d Cir. 2007) (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)).  A warrant permitting seizure of "fairly broad" types of materials is permitted if "the affidavit in support of the search warrant application provides the necessary basis for a determination of probable cause to seize items in each of these categories." Hernandez, 2010 WL 26544, at *8.  In addition, if the criminal scheme at issue is of a "complex nature" and has been ongoing for a number of years, "a lack of a specific time frame in the search warrants is not sufficient in [and] of itself to render the warrants constitutionally overbroad."  Id. at *9.  "The magistrate's determination that probable cause exists is entitled to 'great deference,' and the task of the reviewing court 'is simply to ensure the magistrate had a substantial basis' for that determination."  Id. at *8 (quoting Gates, 462 U.S. at 239).

    The defendant asserts that the warrants authorizing the searches of 100 Grist Mill Road in 2011 and 2010 were not supported by probable cause.  The Government responds that information in the warrant affidavits was more than sufficient to establish probable cause to search offices at that location for evidence of the offenses specified in the warrants.  I agree.

With regard to the 2011 search, the Allen affidavit provided probable cause to search for evidence of the STOLI fraud underlying the superceding indictment.  The affidavit explained that SA Allen's investigation of COT and related entities had disclosed evidence of a pattern of misrepresentations in applications for life insurance policies that are the hallmark of STOLI fraud.  See Ex. 5 to Gov't's Opp'n (ECF No. 97-2).  With regard to the 2010 search, uncontested statements in the Schrader affidavit established probable cause to search the offices of Nova/Benistar in connection with the IRS investigation of abusive section 419 welfare benefit plans.  The affidavit explained that Nova and associated entities and individuals were conspiring to impede the lawful function of the IRS, and were aiding and assisting in the preparation of false income tax returns, through the promotion and administration of abusive 419 plans.  See Ex. 2 to Def.'s Memo. (ECF No. 83-2) ¶¶ 3-9.  The affidavit provides detailed information obtained from numerous sources, including a cooperating witness, undercover agents, tax return information for participants in 419 plans, monitored telephone calls and face-to-face conversations with representatives of Nova and related entities involved in the  wrongdoing.  Id. ¶¶ 17-59.

Accordingly, neither the 2010 warrant nor the 2011 warrant

is overbroad.[5]

    3.  <u>Franks Hearing</u>

The next issue presented by the defendant is whether he is
entitled to a <u>Franks</u> hearing to test the veracity of the
statements in the warrant applications.  "Ordinarily, a
search or seizure pursuant to a warrant is presumed valid.  In
certain circumstances, however, a defendant may challenge the
truthfulness of factual statements made in the affidavit, and
thereby undermine the validity of the warrant and the resulting
search or seizure."  <u>United States v. Awadallah</u>, 349 F.3d 42, 64
(2d Cir. 2003).  To obtain a <u>Franks</u> hearing, a defendant must
"make[] a substantial preliminary showing that a false statement
knowingly and intentionally, or with reckless disregard for the
truth, was included by the affiant in the warrant affidavit."
<u>Franks v. Delaware</u>, 438 U.S. 154, 155-156 (1978); <u>see also</u>
<u>Awadallah</u>, 349 F.3d at 64 ("[A defendant] must show that there
were intentional and material misrepresentations or omissions in

---

    [5] The Government argues that even if either warrant lacked
particularity or was overbroad, the warrant is saved by the good
faith exception to the exclusionary rule.  Under this exception,
the Government can introduce evidence obtained in violation of
the Fourth Amendment unless the "police conduct [was]
sufficiently deliberate that exclusion can meaningfully deter it,
and sufficiently culpable that such deterrence is worth the price
paid by the justice system.  <u>Herring v. United States</u>, 555 U.S.
135, 144 (2009).  Because the warrants at issue are sufficiently
particularized and not overbroad, the good faith exception need
not be considered.  It bears noting, however, that the
defendant's sweeping assertions of bad faith on the part of the
agents are not well-supported.

[the] warrant affidavit.").

With regard to the 2011 search at 100 Grist Mill Road, defendant's counsel asserts that the warrant affidavit "omitted significant material and exculpatory information, all in a reckless disregard for a truth." Def.'s Memo. (ECF. No. 81) at 4. But no material omission or misstatement is identified in the defendant's submissions and he does not explain the basis for his assertion that the agent acted in reckless disregard of the truth. Accordingly, he has not made the showing required to obtain a <u>Franks</u> hearing on the application for the 2011 warrant.

With regard to the 2010 search, the defendant submits an exhibit entitled "Material Misrepresentations And/Or Omissions of the Shrader (sic) Affidavit." <u>See</u> Ex. 4 to Def.'s Memo. (ECF. No. 83-4). The Government argues that this unsworn statement falls short of the substantial preliminary showing required to obtain a <u>Franks</u> hearing. I agree that the defendant has not made the necessary showing. Moreover, because uncontested statements in the Schrader affidavit establish probable cause, a <u>Franks</u> hearing is unnecessary in any case.

4.   <u>Unlawful Retention</u>

In addition to challenging the validity of the warrants, the defendant argues that the Government has unlawfully retained the seized documents and he seeks an order directing that they be returned. Federal Rule of Criminal Procedure 41 was amended in

2009 to permit the retention of electronic evidence.  See Fed. R.
Crim. P. 41(e)(2)(B) (permitting the seizing and/or copying of
electronic evidence in its entirety for later offsite review,
without the time limit set on the warrant's execution).  The
Advisory Committee notes to the 2009 amendment explain the need
for such a procedure:

> Computers and other electronic storage media commonly
> contain such large amounts of information that it is often
> impractical for law enforcement to review all of the
> information during execution of the warrant at the search
> location. This rule acknowledges the need for a two-step
> process: officers may seize or copy the entire storage
> medium and review it later to determine what electronically
> stored information falls within the scope of the warrant.

Nonetheless, the time permitted for offsite review of electronic
evidence is not unlimited.  As the Second Circuit explained in
United States v. Ganias, 755 F.3d 125 (2d Cir. 2014), the review
is "still subject to the rule of reasonableness." Id. at 136.
Defendant argues that the Government's continued retention of
documents seized in 2010 and 2011 violates Ganias.[6]

In Ganias, the Government seized several computer hard
drives pursuant to a search warrant in 2003.  Id. at 127-28.  By
December 2004, the Government had completed searching the files
on the hard drives and it had segregated files that were outside
the scope of the warrant without purging them.  Id. at 129.  In
April 2006, a new warrant was issued authorizing a search of

---

[6] Ganias was reheard en banc on September 30, 2015, but no
decision has been issued.

16

those files for the defendant's financial records.  Id. at 130.
This was unreasonable, the Court held, because the Government was
essentially going back and pulling out documents that were beyond
the scope of the original warrant.  See id. at 137 ("If the 2003
warrant authorized the Government to retain all the data on
Ganias's computers on the off-chance the information would become
relevant to a subsequent criminal investigation, it would be the
equivalent of a general warrant.").

    Unlike the scenario in Ganias, the Government represents
that review of the electronically stored information obtained in
the searches at issue here is still ongoing.  The Government
explains that blanket claims of privilege prevented review of the
documents until June 2013 and that it has not had a full
opportunity to review the documents, which are voluminous.
Crediting the Government's representations, it is not refusing to
return or destroy materials simply because they might be useful
in a subsequent investigation.

    More on point is In the Matter of a Warrant for All Content
& Other Info. Associated with the Email Account xxxxxxx gmail.com
Maintained at Premises Controlled By Google, Inc., No. 14 MAG.
309, 2014 WL 3583529 (S.D.N.Y. July 18, 2014), as amended (Aug.
7, 2014), decided after Ganias, in which the court declined to
impose a time limit on the Government's retention of seized
evidence that was still being reviewed.  See id. at *10 ("[W]e

recognize that the Government has a need to retain materials as an investigation unfolds for the purpose of retrieving material that is authorized by the warrant.").

In this case, the Government has a legitimate interest in retaining the documents for review and possible use as evidence at a trial.  The defendant, on the other hand, has not established that he has standing to demand return of the vast majority of documents, which are in the nature of corporate records.  Nor has he shown that he needs any of the documents in order to prepare his defense or for some other legitimate purpose.  Balancing the interests of the parties in light of the delay caused by the privilege litigation, and the volume of the documents, the Government's retention of the documents pending further proceedings in this case is reasonable.

    5.  Due Process

Finally, the defendant argues that his right to substantive due process has been violated.  Substantive due process is violated when governmental conduct "'is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'"  Velez v. Levy, 401 F.3d 75, 93 (2d Cir. 2005) (quoting Cty. Of Sacramento v. Lewis, 523 U.S. 833, 847 n.8 (1988)).  Defendant asserts that the agents' conduct in executing the warrants was oppressive and caused emotional distress to him and his employees.  He characterizes the 2011 search as a "raid"

18

by scores of agents, some of whom were armed.  A thorough search
of business premises for documentary evidence of a complex,
white-collar crime is likely to be experienced as oppressive and
distressing by the targets and their associates.  Accordingly,
more must be alleged to support a claim based on substantive due
process.  To obtain relief, the defendant must present specific
facts in an affidavit showing that the agents' conduct may fairly
be described as conscience-shocking.  See id. at 94.  No such
showing has been made.[7]

III.  Conclusion

Accordingly, the motions to suppress are hereby denied.

So ordered thus 24th day of December 2015.


                                    /s/ RNC
                              Robert N. Chatigny
                           United States District Judge


---

[7] The defendant asserts that the IRS and DOL are out to get
him because he managed to obtain a new trial in a previous
federal criminal case that ultimately resulted in his conviction
and current imprisonment.  His allegation of a retaliatory motive
is unavailing in the absence of sworn allegations showing that
agents engaged in misconduct.

19