UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No.  3:13CR226 (RNC) |
| | : | |
| v. | : | |
| | : | |
| DANIEL CARPENTER | : | August 9, 2017 |

**GOVERNMENT'S MEMORANDUM IN OPPOSITION TO
DEFENDANT'S MOTION FOR PERSONAL ACCESS
AND RETENTION OF DISCOVERY MATERIAL**

The Government respectfully submits this memorandum in opposition to Daniel Carpenter's motion to allow him to copy the discovery in this matter onto a personal laptop and retain the material in his home.  *See* Doc. 258 ("Def.'s Mot.") at 1 and ¶¶ 10, 18.  The trial in this case is over, and there is no general right to discovery after a trial has concluded. Nor is there a right to post-trial discovery to conduct a fishing expedition in the hopes of finding evidence of a *Brady* violation, as Carpenter it attempting to do here. More importantly, the discovery in this case consists of hundreds of thousands of pages of documents that contain the personal identifying information (including home addresses, dates of birth, social security numbers, bank account and financial information, and medical records) of hundreds of private citizens.  Allowing Carpenter to copy this data onto a personal laptop which he keeps and accesses at his home poses a substantial risk of a data breach that could lead to significant harm if the laptop were lost or stolen, accessed without authorization, infected with a virus, or otherwise compromised.  In light of this risk, the discovery protocol that is already in place, which allows Carpenter to review all of the discovery without any restriction at his attorney's office, is more than sufficient to permit Carpenter to assist in his defense.  Accordingly, and as more fully explained below, Carpenter's request to copy and retain this information at his home should be denied.

## I.     BACKGROUND

The discovery in this case consists of hundreds of thousands of pages of documents obtained from the defendant's business locations (100 Grist Mill Road in Simsbury and 300 First Stamford Place in Stamford), insurance companies, banks, and other third parties.  Because the case centers on applications for universal life insurance, the discovery contains vast amounts of personal identifying information ("PII") of hundreds of private citizens, including insureds, prospective insureds, their family members, and their beneficiaries.  This PII includes, for example, home addresses, phone numbers, dates of birth, social security numbers, bank account and financial information, medical records, and copies of identification documents, such as passports and driver's licenses.

The Government began producing all of this discovery on a rolling basis in January 2014, shortly after Carpenter and his co-defendant Wayne Bursey[1] were arraigned on the original indictment. *See* Ex. A (example of discovery letter sent to Carpenter's counsel); Doc. 122 (Dec. 4, 2014 Mot. Hr'g Tr.) at 82-84; Doc. 116 at 1 (describing Government's discovery productions). The Government produced the discovery to the defense in a text searchable database.  Ex. A at 1. Counsel for Carpenter and Bursey arranged to have the law firm of Halloran & Sage host the database on their behalf, which the defense could access and review.  *Id.*

Throughout the pendency of this case, Carpenter always had the right to view this discovery.  However, the parties agreed that while Carpenter could certainly view the discovery, Carpenter's counsel would not provide copies to Carpenter.  *See* Ex. A. at 2; Def.'s Mot. ¶ 9. Counsel agreed to maintain the discovery in their possession at all times.  Ex. A at 2; Def.'s Mot.

---

[1] As the Court is aware, Bursey passed away before trial, and on May 8, 2015, the charges against Bursey were dismissed. *See* Docs. 124-126.

¶ 9.  As the Government's discovery letters made clear, the Government was concerned about the PII contained in the documents.  *See id*. at 2.  Redacting the PII from all of the documents was impracticable.  The Government agreed that should Carpenter's counsel have a need to provide copies of documents to Carpenter as trial preparation continued, the Government would work with the defense on an appropriate arrangement, provided that counsel redacted any PII prior to providing copies to Carpenter.  *Id*.  Counsel agreed with this arrangement.  *See id.* at 3 (counsel's signature acknowledging agreement).  Thus, all Carpenter needed to do to view the discovery in this case was go to his counsel's office.

On June 20, 2014, Carpenter reported to prison at USP Canaan in Pennsylvania to begin serving his 36-month sentence after being convicted in the District of Massachusetts on 19 counts of mail and wire fraud. *See United States v. Carpenter*, 781 F.3d 599, 603, 607 (1st Cir. 2015); Tr. 12 (noting his sentence began in June 2014).  At that point, Carpenter no longer had the ability to view discovery at his counsel's office.  However, the Government agreed that Carpenter's counsel could send Carpenter copies of materials to USP Canaan for Carpenter to review, provided that any PII was redacted.  *See* Ex. B (email exchange between Government and Carpenter's counsel).

As the Court is aware, trial in this case took place in February and March 2016.  On June 6, 2016, the Court issued its verdict finding Carpenter guilty of all counts charged in the superseding indictment.  Doc. 212.  The Court granted Carpenter an extension, until March 15, 2017, to file his post-conviction motions.  Doc. 226.  The Court noted that no further extensions would be granted.  *Id.*  On March 13, 2017, Carpenter filed his Rule 29 motion for judgement of acquittal, and on March 15, 2017, Carpenter filed his Rule 33 motion for a new trial.  Docs. 228-234.

In early May 2017, after the deadline for filing post-conviction motions had passed, Carpenter's counsel contacted the Government seeking to modify the discovery agreement. Carpenter wanted to access the discovery from his home.  The Government expressed its concern about Carpenter keeping copies of documents with PII of other individuals at his home. Ultimately, on May 9, 2017, the parties reached a confidentiality agreement whereby Carpenter was permitted to remotely access the discovery database at Halloran & Sage from his home. *See* Ex. C (Confidentiality Agreement).  The agreement contemplated that Carpenter would be able to remotely view the discovery from home, but he would not be able to print, photograph, save or duplicate any material he accessed.  *Id.* ¶ 1.  In this way, no material with PII would ever be stored on Carpenter's home computer; the material would at all times reside on the computers at Halloran & Sage. If there were any materials that Carpenter wanted in hardcopy to keep at his home, his attorneys would redact any PII before providing the documents to Carpenter.  *Id.* ¶ 2.

Apparently unhappy with this arrangement and unwilling to simply travel to his attorney's office or Halloran & Sage to view the discovery, Carpenter now seeks permission to copy the entire discovery database, with the PII of hundreds of private individuals, onto a personal laptop that he will keep at his home.  *See* Def.'s Mot. at 1 and ¶¶ 10, 18.

II.  **DISCUSSION**

    A.  **There is no right to post-trial discovery under the Federal Rules of Criminal Procedure, and Carpenter's mere speculation of a *Brady* violation is insufficient to authorize post-trial discovery.**

First, Carpenter's request should be denied because there is no right to discovery under the Federal Rules of Criminal Procedure at this post-trial stage of the case.  Carpenter's trial concluded over 16 months ago, and the Court rendered its guilty verdict over 13 months ago.  Rule 16, which

4

governs discovery in criminal cases, only authorizes discovery "before or during trial[,]" but not after a trial has concluded.  Fed. R. Crim. P. 16 (authorizing the discovery of relevant documents in criminal cases and creating a continuing duty "before or during trial."); *see United States v. Cope*, No. 99-33-ART-(1), 2016 WL 5946919, at *1 (E.D. Ky. June 8, 2016) ("[Rule 16] authorizes the discovery of relevant documents in criminal cases 'before or during trial.' [but Rule 16] does not authorize post-conviction discovery."); *United States v. Merkosky*, No. 1:02-CR-168. 2007 WL 2601390 (N.D. Ohio Sept. 10 2007) (same); *see also United States v. Prather*, No. 3:10-CR-218-D (01), 2016 WL 6893626, at *1 (N.D. Tex. Nov. 23, 2016) ("Rule 16, on which [Petitioner] relies, governs pre-trial disclosure and has no application here, where the defendant has already been tried and convicted" (quoting *United States v. McNair*, No. 1:00cr89-DCB, 2011 WL 2194015, at *1 (S.D. Miss. June 6, 2011)); *United States v. Jeffries*, No. 1:07cr56. 2010 WL 785355 (W.D.N.C. Mar. 4, 2010) ("While Rule 16 . . . creates a continuing duty on the part of the Government to disclose relevant documents, such duty exists only 'before or during trial.' Rule 16 does not create any duty on the part of the Government to engage in post-conviction discovery.").

Under the guise of *Brady* and other cases, Carpenter argues that his discovery request should be granted based on his belief that the Government has failed to turn over *Brady, Giglio, Bagley* and *Jencks* material.  *See* Def.'s Mot. ¶¶ 13-16.  It appears Carpenter wants access to the discovery from home so he can search for exculpatory evidence that will support a future motion to dismiss based on a *Brady* violation.  *See id.* ¶ 14 ("[A]t a later date, Mr. Carpenter will make a motion to have his indictment dismissed based on the government's failure to honor all of its obligations under *Brady-Giglio-Bagley* and *Jencks*.").

5

Carpenter's *Brady* argument presupposes there is such material.   There is not. Significantly—and fatal to his argument—Carpenter has failed to identify any *Brady* material that the Government has not disclosed.[2]   His motion rests entirely on speculation and conjecture that going through the discovery *may* yield supposed *Brady* material.   Essentially, his motion boils down to nothing more than a request to conduct a fishing expedition from his home in the hopes of finding exculpatory or favorable material that would support a future *Brady* motion.

The courts have held that "*Brady*, . . is not a discovery tool" that can be used to conduct a "roving fishing expedition." *United States v. Bin Laden*, No. S7R 98CR1023KTD, 2005 WL 287404, at *11 (S.D.N.Y. Feb. 7, 2005) (denying post-trial discovery request for *Brady* material. "'The court is not required to authorize fact-finding missions to find new evidence when the defense has completely failed in its burden to demonstrate the efficacy of such a mission.' Such is the case here. Through these remaining discovery requests, [the defendant] asks me to authorize and supervise a roving fishing expedition. I decline this invitation and deny his remaining discovery requests." (quoting *United States v. Salameh*, 54 F. Supp. 2d 236, 304 (S.D.N.Y. 1999)); *see, e.g., Weatherford v. Bursey*, 429 U.S. 545, 559 (1977) ("There is no general constitutional right to discovery in a criminal case, and *Brady* did not create one....").

---

[2] In Carpenter's Rule 33 motion for a new trial, he identifies the arbitration testimony of Bruce Mactas as *Brady* material that the Government did not turn over.  *See* Doc. 234 at 6-25.  However, as the Government explained in its opposition to Carpenter's Rule 33 motion, the Mactas transcript was not *Brady* material and there was no *Brady* violation because (i) the material was not exculpatory or favorable to the defense for the reason that Carpenter himself did not believe Mactas was telling the truth in his testimony; until the trial, Carpenter maintained that Mactas lied on the insurance applications despite Mactas' testimony; (ii) the material was in fact available to the defendants prior to trial; (iii) the Government did not suppress the material; (iv) the Government fulfilled its *Brady* obligations by providing a fully searchable discovery database, and (v) in light of the other evidence at trial, and Carpenter's prior position that Mactas lied on the insurance applications and was not truthful in his testimony, the transcript was not material and would not have affected the Court's verdict, thus he cannot demonstrate prejudice.  *See* Doc. 263 at 3-13.

The mere speculation of a *Brady* violation—which is all that Carpenter offers in support of his motion—is insufficient to authorize post-trial discovery. *See, e.g.*, *United States v. Rowland*, No. 3:14CR79 JBA, 2015 WL 800083, at *7 (D. Conn. Feb. 25, 2015) ("*Brady* does not require or authorize [] far-reaching post-trial discovery . . . based on speculation regarding potential violations[.]"), *aff'd*, 826 F.3d 100 (2d Cir. 2016), *cert. denied*, 137 S. Ct. 1330 (2017); *United States v. Calhelha*, 456 F. Supp. 2d 350, 369 (D. Conn. 2006) ("[D]efendants' request for [*Brady*] information amounts to no more than "mere speculation" that the Government has not provided everything that it is obligated to disclose, which is insufficient to justify any order of additional disclosure or discovery."); *United States v. Arias–Izquierdo*, 449 F.3d 1168, 1189 (11th Cir. 2006) ("We declined to order discovery based upon mere speculation as to whether the material would contain exculpatory evidence because to do so would 'convert *Brady* into a discovery device[.]'"); *see also United States v. Petersen*, No. CR 13-0117-WS, 2015 WL 9480035, at *2 (S.D. Ala. Dec. 29, 2015) ("[T]he law is clear that *Brady* is not a discovery device and that post-trial discovery should not be ordered based upon a defendant's idle hope that the requested material might contain exculpatory evidence.").

Even if Carpenter could make a showing that the discovery database that the Government already turned over contains exculpatory or favorable evidence, the Government fails to see how locating such evidence in the database could possibly support a future claim of a *Brady* violation. If exculpatory or favorable evidence is contained in the documents that the Government turned over before trial, then as a matter of law there can no *Brady* violation because the defense had access to the documents.

To demonstrate a *Brady* violation, the burden is on the defendant to show "the Government, either willfully or inadvertently, *suppressed* evidence; (2) the evidence at issue is favorable to the defendant; and (3) the failure to disclose this evidence resulted in prejudice." *United States v. Coppa*, 267 F.3d 132, 140 (2d Cir. 2001) (emphasis added). If any exculpatory or favorable information is in the discovery materials that the Government already turned over, then the Government did not suppress it.

Any argument that the Government failed to identify the *Brady* material for the defense would be misplaced because the circuit courts have consistently held that Government is under no duty to direct a defendant to exculpatory evidence within a mass of disclosed evidence. *See United States v. Gray*, 648 F.3d 562, 567 (7th Cir. 2011) ("To charge prosecutors with knowledge of exculpatory evidence buried in the computer databases of institutions that collect and store vast amounts of digitized data would be an unreasonable extension of the *Brady* rule."); *United States v. Skilling*, 554 F.3d 529, 576 (5th Cir. 2009) (finding the Government was "under no duty to direct a defendant to exculpatory evidence [of which it is unaware] within a larger mass of disclosed evidence."), *aff'd in part, vacated in part on other grounds, remanded*, 561 U.S. 358 (2010); *United States v. Pelullo*, 399 F.3d 197, 212 (3d Cir. 2005) ("*Brady* and its progeny permit the government to make information within its control available for inspection by the defense, and impose no additional duty on the prosecution team members to ferret out any potentially defense-favorable information from materials that are so disclosed."); *United States v. Mulderig*, 120 F.3d 534, 541 (5th Cir. 1997) ("[T]here is no authority for the proposition that the government's *Brady* obligations require it to point the defense to specific documents within a larger mass of material that it has already turned over." (quoting *United States v. Mmahat,* 106 F.3d 89, 94 (5th Cir.

1997))); *United States v. White*, 970 F.2d 328, 337 (7th Cir. 1992) ("When defendants miss the exculpatory nature of documents in their possession or to which they have access, they cannot miraculously resuscitate their defense after conviction by invoking *Brady*."); *see also United States v. Ohle*, No. S3 08 CR 1109 (JSR), 2011 WL 651849, at *4 (S.D.N.Y. Feb. 7, 2011) ("[T]he Government is under no duty to direct a defendant to exculpatory evidence within a larger mass of disclosed evidence."); *aff'd*, 441 F. App'x 798 (2d Cir. 2011); *United States v. Faux*, No. 3:14-CR-28 (SRU), 2015 WL 1190105, at *7 (D. Conn. Mar. 16, 2015) (same).

Moreover, the courts have held that "prosecutors may satisfy their *Brady* obligations through 'open file' policies or disclosures of exculpatory or impeachment material within large productions of documents or files." *United States v. Rubin/Chambers, Dunhill Ins. Servs.*, 825 F. Supp. 2d 451, 455 (S.D.N.Y. 2011); *see also Strickler v. Greene*, 527 U.S. 263, 283 n. 23 (1999) ("We certainly do not criticize the prosecution's use of an open file policy. We recognize that this process may increase the efficiency and the fairness of the criminal process."); *United States v. Warshak*, 631 F.3d 266, 297 (6th Cir. 2010) ("The defendants next argue that the government shrugged off its obligations under *Brady* by simply handing over millions of pages of evidence and forcing the defense to find any exculpatory information contained therein. This argument comes up empty."); *Skilling*, 554 F.3d at 576; *Ohle*, 2011 WL 651849, at *3.

This is especially true when the prosecution provides a searchable database, like the Government did here, or takes other additional steps "to relieve some of the burden of its 'voluminous' disclosure, so that Defendants are in at least as good a position as the Government to identify *Brady* material therein." *Rubin/Chambers*, 825 F. Supp. 2d at 456-57 (citations omitted) (finding no *Brady* violation where the Government had provided "searchable electronic

productions"); *see Skilling*, 554 F.3d at 576–77 (finding no *Brady* violation where "[t]he open file was electronic and searchable."); *Ohle*, 2011 WL 651849, at *4 ("[T]he Government, to facilitate review of the documents, provided defense counsel with an electronically searchable Concordance database."), *aff'd*, 441 F. App'x at 804 (rejecting *Brady* claims "as meritless" and declining defendant's request to remand for evidentiary hearing).

There is no dispute that Carpenter's trial counsel had access to the searchable discovery database prior to trial.  Thus, any future claim of a *Brady* violation based on evidence that Carpenter may find in the discovery database would be meritless.

Carpenter's contention that his ability to personally review the discovery was restricted due to his incarceration for a separate fraud scheme does not save his argument.  As discussed, Carpenter's counsel had access to the documents before trial, and therefore, any evidence Carpenter now discovers would not constitute newly discovered evidence.  *See, e.g., Hector v. Greiner*, No. 99 CV 7863 FB, 2000 WL 1240010, at *1 (E.D.N.Y. Aug. 29, 2000) ("Newly discovered evidence is, by definition, incapable of discovery through counsel's due diligence before or during trial. Evidence in existence at an earlier date, though perhaps unknown to a petitioner, cannot later be described as newly discovered." (internal citations omitted)); *Roman v. United States,* No. 09–CV–7942 (GEL), 2010 WL 3825738, at *2 (S.D.N.Y. Sept. 29, 2010) (holding that evidence that had been previously provided to defense counsel was "not new evidence in any sense of the word"); *see also United States v. Osorio-Pena*, 247 F.3d 14, 18-19 (1st Cir. 2001) (holding that "newly discovered evidence" refers to information unavailable to defense counsel, not defendant's personal awareness of information); *United States v. Moore*, 572 F. App'x 214, 215 (4th Cir. 2014) (holding that evidence is not "newly discovered" if defense

counsel had access to the material); *United States v. Okun*, No. 3:08CR132, 2015 WL 1402142, at *5 (E.D. Va. Mar. 25, 2015) ("To the extent that [defendant] argues that, even though the records were available to his counsel, he did not personally review these records until after his trial, that fails to make the evidence newly discovered), *aff'd*, 610 F. App'x 272 (4th Cir. 2015); *United States v. Gonzalez*, 319 F.3d 291, 297 (7th Cir. 2003) (evidence is not regarded as "suppressed" when it can be accessed before trial by the exercise of reasonable diligence, holding no *Brady* violation where defense counsel could have discovered the "new" information by carefully inspecting the evidence); *United States v. Sypher*, No. 3:09-CR-00085, 2011 WL 579156, at *2 (W.D. Ky. Feb. 9, 2011), *aff'd*, 684 F.3d 622 (6th Cir. 2012) (holding that evidence is not newly discovered if it was available to the defendant's trial counsel prior to and during the trial.)

In any event, the Government represents that it has fully and completely complied with its obligations under *Brady* and its progeny, and that it will continue to do so. "District courts in this circuit routinely accept this type of representation that the Government has made concerning *Brady* and *Giglio* material." *United States v. Jacobs*, 650 F. Supp. 2d 160, 166 (D. Conn. 2009) (quoting *Calhelha*, 456 F. Supp. 2d at 369); *see Bin Laden*, 2005 WL 287404, at *13 (finding Government's representation that it has complied with its *Brady* obligations valid in the post-trial setting). Other than Carpenter's conclusory and speculative allegations, Carpenter had failed to show how the Government has violated its discovery obligations under *Brady*, *Giglio, Bagley* or *Jencks*.

Accordingly, Carpenter's request to copy and retain the entire discovery database at his home, presumably so that he can scour through the documents for hours on a roving fishing expedition in the mere hope of finding evidence in support of what would be a futile *Brady* claim, is unavailing.

11

**B.     The current discovery agreement, which provides Carpenter with more than sufficient ability to review the discovery materials in this case, is reasonable given the risks associated with allowing PII to be kept on a personal computer in Carpenter's home.**

Despite Carpenter's lack of post-trial discovery rights, and despite Carpenter and his counsel's open-file access to the Government's case material for more than three years now, the Government does not suggest that Carpenter be prohibited from further reviewing the discovery now that the trial is over.  Indeed, the current discovery agreement allows Carpenter to access the database and review the discovery without restriction at his attorney's office.  To the extent that Carpenter wants to continue to review discovery at his attorney's office, even though the deadline for filing post-conviction motions has long passed, he is able to do so.

However, the Government vehemently objects to allowing Carpenter to keep on a personal laptop in his unsecured home the hundreds of thousands of pages of documents that contain the personal, financial, and medical information (including social security numbers and dates of birth) of hundreds of private citizens.  Carpenter's personal residence does not have physical security measures consistent with data centers or law firms; his personal laptop or desktop does not have the degree of encryption and cybersecurity features, required in secure data facilities, that would thwart unauthorized access, internet-based intrusions, malware, viruses, and other common computer-based risks.  Carpenter is not insured against data breaches that would inevitably follow a lack of security, nor could he cover the losses to the COT insureds (for example) when their identifying information is stolen and exploited if there is a data breach or if his computer is lost, stolen, or otherwise compromised.

Simply put, if the computer or the data on the computer is compromised, the potential havoc it could wreak on the hundreds of individuals who would be affected is enormous.  As the

court is aware, many of the potential insurance applicants and their family members have significant financial assets.  Armed with the PII of these individuals, a fraudster could inflict considerable harm.  If Carpenter's computer is compromised or stolen, it will be too late to protect against the fraud that could be inflicted on these third parties.  Given these risks, Carpenter's self-serving assurances that he will not disseminate the information are simply not enough.

By having the discovery maintained in the custody of Carpenter's counsel, the Government and the Court can at least have some confidence that the information will be protected with hopefully the same security measures and insurance coverage that the law firm has in place to protect its client's confidential and privileged documents.  The same confidence does not extend to the security of PII residing on a personal computer in Carpenter's home.

Even absent the risk of data breach, the Government is also opposed to a twice-convicted felon like Carpenter—a fraudster himself who has now defrauded victims in two federal cases—from personally retaining the PII of hundreds of private citizens.  The Government presumes these citizens likely feel the same way.

Under these circumstances, requiring Carpenter to view the discovery at his attorney's offices or at Halloran & Sage is not an undue burden.  *See, e.g., United States v. Griffin*, No. 3:13-CR-80-DPJ-LRA, 2014 WL 1767201, at *1 (S.D. Miss. May 2, 2014) (denying defendant's request to keep copies of discovery containing PII of other individuals); *United States v. Russell,* No. 15-CR-30005-DRH, 2015 WL 6460134, at *2 (S.D. Ill. Oct. 27, 2015) (finding that protective order provision that defendant could only review discovery materials at his attorney's office "was narrowly drawn and not overly onerous on the defendant. It does not prevent the defendant from inspecting discovery or from discussing the discovery with his attorney. It imposes, at most, a

minor inconvenience to the defendant. Given the circumstances, the Court finds that the convenience of the defendant must give way to the government's legitimate concerns regarding witness safety."); *United States v. Johnson*, 191 F. Supp. 3d 363, 374 (M.D. Pa. 2016) (finding good cause for protective order requiring defendants to review protected discovery in presence of counsel given the volume of discovery and the impracticability of redacting information); *see also* Fed. R. Crim. P. 16(d)(1) (permitting a court to restrict discovery for good cause); *Alderman v. United States*, 394 U.S. 165, 185 (1996) (stating that a trial court "can and should, where appropriate, place a defendant and his counsel under enforceable orders against unwarranted disclosure of the material which they may be entitled to inspect."). This arrangement appropriately balances Carpenter's need to access discovery while properly protecting the PII of third parties.

Carpenter offers no reasonable explanation why the current discovery agreement, which allows him to view the discovery at his attorney's office without restriction, does not suffice. He only states the current process is "unwieldy" because it involves his "search being approved by his counsel, done by people at Halloran & Sage, and then the results of that search being approved by [his trial attorneys]." Def.'s Mot. ¶ 12. The Government is unsure why Carpenter cannot remotely access the computers at Halloran & Sage and do the searches himself, as the most recent confidentiality agreement permits.

If there are technical reasons prohibiting remote access from home, Carpenter fails to explain why he cannot go to the offices of his trial counsel or Halloran & Sage to conduct the search. Indeed, that is precisely what his sister did. Prior to trial and during trial, Carpenter's sister signed a confidentiality agreement and assisted in his defense by reviewing discovery at the offices of Halloran & Sage. *See* Exs. D and E. There is no reason Carpenter cannot do the same thing.

14

Carpenter's claim that his access to the discovery "affects the computer system at Halloran & Sage" and searches "can take days to complete" seems specious.  *See* Def.'s Mot. ¶ 16.  At no point prior to trial or during trial did Carpenter's counsel, Carpenter's sister, or Halloran & Sage complain that searches took days or affected Halloran & Sage's computer system.

While having Carpenter sit at Halloran & Sage or at his trial counsel's office for hours may be inconvenient for them, the inconvenience is minor when compared to the substantial risk of having the PII of hundreds of individuals reside on a personal laptop at Carpenter's home.  This is particularly true in light of the limited discovery rights that Carpenter has now that his trial is over.

In short, Carpenter's motion is nothing more than an attempt to hurl baseless accusations of discovery violations at the Government based on unfounded speculation and conjecture. Moreover, the Court should not let Carpenter, a twice-conviction felon, possess the personal identifying information of hundreds of private citizens on a personal laptop in his own home. The Government has no objection if Carpenter wants to spend hundreds of hours scouring through the discovery even though his deadline for filing post-conviction motions has passed. The Government only asks that he do so at the offices of his attorneys or at Halloran & Sage so that the security of the documents can be maintained.  The Government submits this slight inconvenience to Carpenter and his attorneys does not outweigh the risks of having the information maintained at Carpenter's private home.

Accordingly, Carpenter's motion should be denied.

15

## **CONCLUSION**

For the forgoing reasons, the Government respectfully requests that the Court deny the

defendant's motion.

Respectfully submitted,

DEIRDRE M. DALY
UNITED STATES ATTORNEY

*/s/ David E. Novick*

_____

DAVID E. NOVICK
ASSISTANT U.S. ATTORNEY
Federal Bar No. phv02874
157 Church Street, 25th Floor
New Haven, CT 06510
Tel: 203-821-3700
Email: David.Novick@usdoj.gov


*/s/ Neeraj N. Patel*

_____

NEERAJ N. PATEL
ASSISTANT U.S. ATTORNEY
Federal Bar No. phv04499
157 Church Street, 25th Floor
New Haven, CT 06510
Tel: 203-821-3700
Email: Neeraj.Patel@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 9, 2017, a copy of the foregoing Memorandum was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

*/s/ Neeraj N. Patel*

_____

Neeraj N. Patel
Assistant United States Attorney