**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CRIMINAL NO. 3:13CR226(RNC) |
| v. | ) | |
| DANIEL E. CARPENTER | ) | SEPTEMBER 29, 2017 |

**MR. CARPENTER'S REPLY BRIEF IN SUPPORT OF HIS MOTION TO RECONSIDER AND VACATE THE COURT'S JUNE 6, 2016 DECISION AND FINDINGS OF FACT**

## I. AUTHORITY FOR MR. CARPENTER'S MOTION TO RECONSIDER

Although motions to reconsider are not expressly provided for in the Federal Rules of Criminal Procedure, courts have long recognized that both defendants as well as the government may properly file them and judges may properly rule upon them. *See, e.g., United States v. Moreno*, 12 F.Supp.3d 313, 315 (N.D.N.Y. 2014):

> However, such motions in the criminal context have historically been allowed within the Second Circuit as a "traditional and virtually unquestioned practice." *United States v. Clark,* 984 F.2d 31, 33 (2d Cir. 1993) (*quoting United States v. Dieter,* 429 U.S. 6, 8 n. 3 (1976), *quoting United States v. Healy*, 376 U.S. 75, 79 (1964) (referring to motions to reconsider in criminal cases as a "traditional and virtually unquestioned practice"); *United States v. Ibarra*, 502 U.S. 1, 4-7 (1991)). Where, as here, "the Rules of Criminal Procedure do not speak specifically to a matter, a court conducting a criminal case is permitted to draw from and mirror a practice that is sanctioned by the Federal Rules of Civil Procedure." *United States v. Morrison,* 521 F.Supp.2d 246, 251-52 (S.D.N.Y.2007).

In that regard, Federal Rule of Criminal Procedure 57(b), which is entitled "Procedure When There Is No Controlling Law", provides in part that "[a] judge may regulate practice in any manner consistent with federal law, these rules, and the local rules of the district." Fed.R.Crim.P. 57(b). "Where the Rules of Criminal Procedure do not speak specifically to a matter, a court conducting a criminal case is permitted to draw from and mirror a practice that is sanctioned by the Federal Rules of Civil Procedure." *Morrison* at 252, *quoting United States v.*

*James,* 2007 WL 914242, at *3 (E.D.N.Y. Mar. 21, 2007). "Thus, when deciding motions for reconsideration in criminal matters, courts in this district have resolved such motions according to the same principles that apply in the civil context." *James* at *3. *See, also, United States v. Fiorelli*, 337 F.3d 282, 286 (3d Cir. 2003) ("motions for reconsideration may be filed in criminal cases"); and *Clark*, 984 F.2d at 33-34.

The Second Circuit in *Clark* explained the history of Rule 60(b) motions for reconsideration in criminal cases and that the Supreme Court in *Dieter* relied upon "traditional and virtually unquestioned practice" in allowing the government to do a motion for reconsideration in that case that overturned a victory for the defendant. *Dieter*, 429 U.S. at 8, n. 3, *quoting Healy.* It is significant that both *Dieter* and *Healy* are mentioned in *Clark*, because both cases involved motions for reconsideration filed by the **government** and not the defendants in those cases. Both the Second Circuit in *Clark* and the Supreme Court in *Dieter* specifically mention the efficacy of motions for reconsideration in a criminal context, and if done properly, they will put off the timing for an appeal. The cases cited in the government's opposition brief are mostly post-conviction cases where the defendants are usually told that the only way they can attack a conviction is through a 2255 petition and not a motion pursuant to Rule 60(b). But, the Supreme Court has also ruled that Rule 60(b) motions are appropriate if challenging how a 2255 petition was handled and that a court must warn the defendant if it will consider a Rule 60(b) motion to be a second or successive 2255 petition. *See Gonzalez v. Crosby*, 545 U.S. 524 (2005). Mr. Carpenter has not been convicted yet, and the Supreme Court in both *Dieter* and *Healy* suggest that it is much better for a district court to correct its own mistakes prior to one of the parties having to take an appeal.

Perhaps a perfect example of the government's inconsistency in the prosecution of Mr. Carpenter can be found in a case cited in the government's own Opposition, see Doc. 274 at 10, *United States v. Lucarelli*, 490 F.Supp.2d 295 (D. Conn. 2007), where Judge Arterton granted the government's motion for reconsideration, but held to her original decision to grant Lucarelli's Rule 29 Judgment of Acquittal instead of the new trial under Rule 33 that the government felt was more appropriate, stating that:

> Because no rule of criminal procedure addresses motions for reconsideration, courts typically adopt the standards applied to such motions in civil cases....Reconsideration is appropriate only "if there has been an intervening change in controlling law, there is new evidence, or a need is shown to correct a clear error of law or to prevent manifest injustice." *United States v. Sanchez*, 35 F.3d 673, 677 (2d Cir. 1994). *Lucarelli* at 296-97.

Obviously, Mr. Carpenter is distraught over the fact the government pushed so hard for a new trial in *Lucarelli*, but fails to recognize any "manifest injustice" in Mr. Carpenter's case that requires a new trial. In *Lucarelli*, for its motion for reconsideration, the government relied upon an obscure case from the Eighth Circuit, which was decided after the defendant's trial and arguments for the Rule 29, which Judge Arterton analyzed and found to be inapplicable though it was not controlling law. *See Lucarelli* at 302, n.3. To the contrary, Mr. Carpenter has put forward *Countrywide, Finazzo*, and *Mittelstaedt* from the Second Circuit, plus the "famous" cases of *Takhalov* and *Weimert*, the Supreme Court cases of *Shaw v. United States*, 137 S.Ct. 462 (2016) and *Honeycutt v. United States,* 137 S. Ct. 1626 (2017), as well as the unanimous decision in *Skilling* that the government continues to disregard in the "mirror image" of fraud based on Second Circuit precedent like *Starr*. *See Skilling v. United States*, 561 U.S. 358, 400 (2010). Therefore, based on previous motions for reconsideration made by the government in other cases, notably *Dieter, Healy,* and *Moreno* above, Mr. Carpenter respectfully asks the Court to grant his Motion to Reconsider and to alter its judgment in the interests of justice.

## II. SEVERAL RECENT DECISIONS SUPPORT MR. CARPENTER'S MOTION FOR RECONSIDERATION

Since Mr. Carpenter's trial in March of 2016, there have been a number of major decisions that should cause the Court to reconsider and reverse its decision, including but not limited to the following: *United States v. Countrywide*, 822 F.3d 650, 658 (2d Cir. 2016), *United States v. Takhalov*, 827 F.3d 1307 (11th Cir. 2016), *United States v. Weimert*, 819 F.3d 351 (7th Cir. 2016), *United States v. Finazzo,* 850 F.3d 94 (2d Cir. 2017), and *Honeycutt.* The government in its Opposition Brief (Doc. 274) (Gov. Opp.) refers to its Opposition to the Rule 29 (Doc. 262), where it spends a paragraph on *Countrywide*, two sentences on *Takhalov*, and virtually ignores *Weimert.* Mr. Carpenter respectfully asserts if the fraudulent conduct in *Countrywide* that cost the American taxpayers billions of dollars did not amount to "mail and wire fraud", then it is ludicrous to assume that Mr. Carpenter committed any fraud here because he lied to no one and did not fill out or sign any contract in this case in conduct that paid millions of dollars to the carriers concluded with the insurance contracts. The Second Circuit in *Countrywide* concluded mail and wire fraud cannot exist unless the persons signing the contract intended not to follow through on their part of the bargain at the time the contract was signed. "Absent such proof, a subsequent breach of that promise – even where willful and intentional – cannot in itself transform the promise into a fraud." *Countrywide* at 662. The Second Circuit also relied on *McEvoy Travel v. Heritage Travel*, 904 F.2d 786, 791-92 (1st Cir. 1990) for the proposition that "the common law requires proof—other than the fact of breach—that, at the time a contractual promise was made, the promisor had no intent ever to perform the obligation." *Countrywide* at 660, *quoting Sanchez v. Triple-S*, 492 F.3d 1, 11 (1st Cir. 2007):

> A defendant's failure to disclose information, without more, cannot make out a violation of the mail and wire fraud statutes. *United States v. Autuori*, 212 F.3d 105, 118 (2d Cir. 2000)....We nevertheless observed that "[i]t would be a truly revolutionary change to

make a criminal out of every salesman (assuming the use of the mails or telephone) who did not take the initiative to reveal negative information about the product and who—a jury might find—secretly harbored in his heart the hope that the buyer would never ask."

The government seems to dismiss and discount the Eleventh Circuit's analysis in *Takhalov* of for the difference between a "scheme to deceive", which is not criminal, and a "scheme to defraud" as the contemplation of harm in the "Parable of the Deceitful Neighbor". But, it is clear that a criminal "scheme to defraud" requires both a material deception (my child is ill, please come quickly) **and** the intent to harm (i.e. the exchange of a counterfeit dollar instead of a real dollar). The *Takhalov* description of criminal fraud requires much more than just the deceitful conduct of the defendants, but in this case, Mr. Carpenter did not even **call**, much less **lie** to the "neighbor" or anyone else, and his company Grist Mill Capital paid real dollars to the carriers. There is no fraud here on the part of Mr. Carpenter as a matter of law.

Similarly, the government ignores the Seventh Circuit's decision in *Weimert*, and while it is clear that Weimert's conduct was deceitful and reprehensible and costly to both the bank selling the property and the ultimate purchasers, Weimert's conviction was overturned because the Seventh Circuit believed that the parameters of wire fraud had been stretched too far to encompass business negotiations between sophisticated parties. In using the analogy of the negotiations between the buyer and the seller of a car over state lines using emails and telephone, the Seventh Circuit reaches the same result as the Eleventh Circuit did in the "Parable of the Deceitful Neighbor" but for different reasons. Mr. Carpenter is the rare defendant that benefits from all three holdings in *Countrywide, Takhalov*, and *Weimert*, and therefore clearly meets the standard for a motion for reconsideration in having an "intervening change" in controlling law.

Additionally, the Second Circuit's recent decision in *Finazzo* makes clear that not only does the defendant need to contemplate actual "concrete" harm (*see Rossomando*), but the

intended harm to the victim must be **tangible harm**. Not only was there no presentation by the government during Mr. Carpenter's trial of his **intent to harm** anyone, the words **tangible harm** as required by the Second Circuit in *United States v. Mittelstaedt*, 31 F.3d 1208 (2d Cir. 1994) and as reiterated and reaffirmed in *Finazzo* are nowhere to be found in the Court transcripts or in the government's indictments. Furthermore, nowhere does the government, or the Court's Opinion, explain how arranging the funding of life insurance policies in a trust to pay the carriers millions of dollars could possibly cause any type of harm to the carriers, much less the **tangible harm** required by law. Mr. Carpenter did not lie to anyone, but even if he did, the government has not even alleged much less proven beyond a reasonable doubt that paying millions of dollars of premiums at the agreed-upon terms for the Age, Gender, and Health of the insured, could somehow be intending to cause the carriers **tangible harm**. If for no other reason than this, the Court should grant Mr. Carpenter's Motion to Reconsider, and then dismiss the indictment for failure to state a crime.

This leads to the most recent controlling authority affecting Mr. Carpenter's case, the Supreme Court's decision in *Honeycutt*, where for the purposes of the criminal forfeiture statutes, the Court defined the word "**obtain**" as requiring something that Mr. Carpenter could take from the victim and acquire and possess for himself. As the Court is aware, Mr. Carpenter maintains that "knowledge" and "information" are not cognizable as "money or property" under the federal fraud statutes (*see Skilling v. United States,* 561 U.S. 358, 400 (2010), *Sekhar v. United States*, 133 S. Ct. 2720 (2013), and Judge Eginton's decision in *United States v. $52,037.96*, 2015 WL 5601848 (D. Conn. 2015)), but even assuming that it was, there was no "scheme to defraud" in this case because there was no intent to cause "tangible harm" to the carriers. While Mr. Carpenter respectfully disagrees with the government's description of the

Court's conclusions, whether the Charter Oak Trust policies were "STOLI" or "premium financing" cannot possibly be "valuable economic information" even under the "Right to Control" theory of fraud, nor can it be "money or property" to be **obtained** for the purposes of Sections 1341 or 1343. There is no "property" here that Mr. Carpenter could "obtain" as in the phrase "use of the mails or wires in furtherance of a scheme to defraud to **obtain** money or property." *See* 18 U.S.C. §§1341 and 1343. If there is no "property" here to be **obtained**, there is no mail or wire fraud, no matter how despicable the conduct may be. *See United States v. Pierce*, 224 F.3d 158, 165 (2d Cir. 2000): "A scheme to deceive, however dishonest the methods employed, is not a scheme to defraud in the absence of a property right for the scheme to interfere with." *quoting Carpenter v. United States*, 484 U.S. 19, 27–28 (1987). Mr. Carpenter respectfully submits to the Court that the June 6, 2016 Opinion cannot possibly square with the Supreme Court's recent decision in *Honeycutt* because there was no "money or property" in this case that Mr. Carpenter could possibly **obtain** from the carriers from the submission of allegedly false applications submitted by other people.

This is critically important because the Second Circuit's decision in *Finazzo* compares the subtle differences in its holdings in both *Mittelstaedt* with the **tangible harm** theory, and *United States v. DiNome*, 86 F.3d 277 (2d Cir. 1996), which came after and established that lying on a mortgage application to **obtain** a mortgage constituted a scheme to defraud under the mail and wire fraud "Right to Control" theory of fraud, which Mr. Carpenter asserts elsewhere would be a Constructive Amendment of his Indictment. But, both Sections 1341 and 1343 state the heart of Mail and Wire Fraud is the **obtaining** of money or property through the use of knowingly false material representations. Mr. Carpenter respectfully suggests that after the Second Circuit's definition of what it is to "obtain" money or property in *DiNome* and what the

legal definition of "obtain" is after *Honeycutt*, that the Court both misapprehended the salient facts of this case as well as the law of the Second Circuit in *Mittelstaedt* and *DiNome* and now with the intervening cases of *Countrywide, Finazzo*, and *Honeycutt*, Mr. Carpenter believes that the Court should grant his Motion for Reconsideration and vacate its June 6, 2016 Opinion and grant a new trial to Mr. Carpenter in the interests of justice.

## III. IN ITS OPPOSITION BRIEF, THE GOVERNMENT FAILS TO EXPLAIN OR DEFEND THE GLARING FACTUAL ERRORS IN THE OPINION

The June 6, 2016 Opinion makes a number of material misstatements of facts, such as that Mr. Carpenter controlled all of the Benistar entities. This is a material factual error that the government knew to be untrue from the numerous documents seized. See attached as Exhibit One the "Synopsis of the Case" prepared by Agents Shaun Schrader and Kathy Enstrom on April 9, 2010 to get IRS executive approval for the raid, which contradicts and refutes many of the statements alleged to be "facts" in the Opinion. Significantly, Mr. Carpenter's name is nowhere to be found in the detailed account of the "Benistar" entities at 100 Grist Mill Road and the 419 plans the government was investigating at that time. Based on this material and undisclosed *Brady* evidence, which is clearly newly-discovered evidence, the Court should vacate its Opinion because it contains many factual errors and is "manifestly unjust" to Mr. Carpenter.

Furthermore, nowhere during the trial and certainly nowhere in the Opinion is there a description of the "objective" of the conspiracy. The Opinion just misstates the government's parroting of the facts in *Binday*, but fails to show how the government proved what is required for a "conspiracy" under Second Circuit law in *United States v. Rosenblatt*, 554 F.2d 36 (2d Cir. 1977), and most recently in *United States v. Valle*, 807 F.3d 508 (2d Cir. 2016). If there was no conspiracy in *Valle* with all of the emails between Bollinger and Valle, then clearly there was no conspiracy here as neither the Opinion nor the government have shown even one email where

Mr. Carpenter is in a conspiracy with anyone. In fact, all of the government's newly-produced *Brady* emails show that Mr. Carpenter thought Mr. Mactas was the liar and the "STOLI" fraudster. Suffice it to say, the government has failed to show any "conspiracy" between Mr. Carpenter and anyone else, and the Opinion is devoid of stating what the actual "object" was of the alleged conspiracy that Mr. Carpenter allegedly joined, and "when" and to do "what" illegal act. None of this is explained, and the statements that are found in the Opinion are incorrect and actually constitute a Constructive Amendment of the Indictment. None of these points are addressed in the government's Opposition, nor could they be. None of the mailings or wires in the Indictment were **in furtherance of any fraud**, nor were they overt acts for the purpose of **any** alleged conspiracy, and based on the Schrader-Enstrom "Synopsis of the Case" that they used to authorize the unlawful search and seizure, Mr. Carpenter did not **cause** any of the mailings and wires because he did not "control" any of the Benistar entities or their employees. Moreover, none of the Indictment's mailings and wires had anything to do with the alleged fraud of lying to the carriers on the submitted applications nor were any found within the Statute of Limitations as they were all prior to January 2009.

While it may be true that conspiracies under §1349 do not require an overt act, they still need to have an unlawful act as its objective and those acts must be found within the Statute of Limitations. *See United States v. Ben Zvi*, 168 F.3d 49 (2d Cir. 1999) and *United States v. Grimm*, 738 F.3d 498 (2d Cir. 2013). In *Grimm*, the Second Circuit explained that "generally, overt acts have ended when the conspiracy has completed its influence on an otherwise legitimate course of common dealing that remains ongoing for a prolonged time, without measures of concealment, adjustment or any other corrupt intervention by any conspirator." *Grimm* at 503. As a result, "serial payments...do not constitute overt acts" when they are

"lengthy, indefinite, ordinary, typically noncriminal and unilateral." *Id.* Although the Second Circuit happened to be considering a conspiracy that statutorily required proof of an overt act, the logic of *Grimm* plainly applies to conspiracy statutes (like those charged here) that do not require an overt act. As to those types of statutes, the Second Circuit has never suggested that they continue in perpetuity, but, instead, has held that they continue only so long as they "contemplate[] a continuity of purpose and a continued performance of acts." *United States v. Spero*, 331 F.3d 57, 60 (2d Cir. 2003). Thus, the contemplated "acts" to be "perform[ed]" have to be acts in furtherance of the conspiracy's actual purpose. Therefore, even where a conspiracy does not require an overt act, it is over for statute of limitations purposes when it no longer contemplates or involves acts that would satisfy *Grimm*. Also, Mr. Carpenter has proven if there was an alleged "conspiracy", it ended when the applications were submitted. *See Spero* at 61.

**CONCLUSION**

Mr. Carpenter has clearly met the standard for Reconsideration as there have been several intervening decisions affecting and clarifying the controlling law since his trial. There were also a number of unsupported factual errors and erroneous statements, and mistakes made by the government in this case that constitute material and factual misrepresentations pursuant to Rule 60(b)(3), and the overall misapprehension by the Court of the true facts in the case in the Opinion constitutes a "manifest injustice" pursuant to Rule 60(b)(1). Additionally, the *Brady* evidence from the Schrader and Enstrom depositions certainly qualifies as newly-discovered evidence under Rule 60(b)(2). For those reasons, Mr. Carpenter respectfully asks that his Motion be granted and the Court rescind and vacate its Opinion of June 6, 2016 in the interests of justice.

**Respectfully submitted,**
Defendant, Daniel Carpenter

By____________________________

Richard Brown, Esq.
Brown Paindiris & Scott, LLP
100 Pearl Street, 2nd Floor
Hartford, CT 06103
Tel 860.522.3343
Fax 860.522.2490
Fed Bar No. ct00009
rbrown@bpslawyers.com

**CERTIFICATION**

This is to certify that on September 29, 2017, a copy of the foregoing Reply was served by email to all parties by operation of the Court's electronic filing system or by email on anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

A.U.S.A. David Novick
Office of U.S. Attorney
157 Church Street, 25th Floor
New Haven, CT 06510

A.U.S.A. Neeraj Patel
Office of U.S. Attorney
157 Church Street, 25th Floor
New Haven, CT 06510

Richard Brown, Esq.
Brown Paindiris & Scott, LLP
100 Pearl Street, 2nd Floor
Hartford, CT 06103
Tel 860.522.3343
Fax 860.522.2490
Fed Bar No. ct00009