# EXHIBIT ONE

| Enforcement Action Review Form ||
|---|---|

### 1) GENERAL INFORMATION

| A. Field Office<br>St. Paul | B. Date<br>04/05/2010 |
|---|---|
| C. Subject Name (Last, First, M)<br>Neumann, Guy | D. Occupation<br>419 Salesman |
| E. CI Investigation Number (if applicable) 1000230004 | F. Special Agent Name<br>Shaun Schrader |

G. Type of Enforcement Operation:
☒ Search Warrant ☐ Arrest Warrant ☐ Seizure Warrant
☐ Other

H. Have the Asset Forfeiture Coordinator, Computer Investigative Specialist and Public Information Officer been notified of pending action?
☒ Yes ☐ No ☐ Not Applicable

I. Proposed Date and Time of Execution
04/20/2010 9:00 AM

J. Previous Enforcement Action
Date        Type

K. Type of Investigation:
☐ Legal Income ☐ Illegal/Non Narcotic ☐ OCDETF
☐ Counterterrorism ☒ Other Explain Tax Shelter

L. Is a CI special agent the Affiant?  ☒ Yes ☐ No
If "no", what is the Affiant's agency?

M. Is CI participation incident to an ongoing task force?
☐ Yes ☒ No
☐ OCDETF ☐ HIDTA ☐ Counterterrorism
☐ Other

N. Address where enforcement action is to be conducted:
Street: 100 Grist Mill Road
City and State: Simsbury, CT

Type of location: ☐ Residence ☒ Business ☐ Both
Or ☐ Other – Describe
(If there are multiple sites, attach list to synopsis section)

O. Is this a Grand Jury Investigation? ☒ Yes ☐ No

P. Is a Service Initiated Grand Jury Request pending?
☐ Yes ☒ No
(If YES, the proposed grand jury request should be held in abeyance).

### 2) SPECIAL PERSONS

A. Is this a Title 26 or Title 18 tax-related warrant that pertains to any of the following persons or representatives?

Accountant, Lawyer, Physician, Public Official or Candidate, Clergy, News Media Representative, Labor Union Representative, Exempt Organization Member,

☐ Yes (Explain) ☒ No
(If yes, CT Counsel review, Director, Field Operations concurrence, and DOJ Tax Division approval is required)

B. Does the warrant pertain to a foreign national?
☐ Yes ☒ No
Agent designated to notify arrestee of their right to Consular access _____
Agent designated to notify the arrestee's embassy

C. Do you expect the enforcement action to draw publicity?
☐ Yes ☒ No
☐ National ☐ Regional ☐ Local

D. What is the subject's notoriety in the community?
☐ High ☐ Medium ☒ Low

### 3) INFORMANT INFORMATION
*CRIMINAL INVESTIGATION WARRANT ONLY*

| | YES | NO |
|---|---|---|
| A. Is the primary source of information a confidential informant? | ☐ | ☒ |
| B. Has the confidential informant been paid for information? | ☐ | ☐ |
| C. Has the confidential informant furnished reliable information to CI in the past? | ☐ | ☐ |
| D. Has the information provided by the confidential informant for this warrant been corroborated? | ☐ | ☐ |
| E. If "D" is "no", has a polygraph exam been considered? | ☐ | ☐ |
| (If "yes", discuss details in explanation section) | | |
| F. Is there documentary evidence to support the confidential informant's information in this instance? | ☐ | ☐ |
| G. Does the confidential informant have a criminal record? | ☐ | ☐ |
| (If "yes", attach detail in explanation section) | | |
| H. Does another informant corroborate this information? | ☐ | ☐ |

I. If this informant is not controlled by Criminal Investigation, note the Agency name:

### 4) COMPLETE FOR NON-TAX CI SEARCH WARRANTS ONLY

| | | |
|---|---|---|
| A. Are there other methods of acquiring the same evidence? If "yes", explain | ☐ | ☐ |
| B. Is the potential for destruction of evidence likely in this investigation, if this action does not occur? | ☐ | ☐ |
| C. Is contraband expected to be encountered? (If "yes" detail in explanation section) | ☐ | ☐ |

### 5) CI TAX AND TAX RELATED WARRANTS ONLY (Detail on Page 2)

A. Significance Evaluation: Discuss the significance of the case – tax due, nature of the fraud, need for evidence to be seized, anticipated effect on voluntary compliance

B. Intrusiveness Evaluation: Discuss why other investigative methods cannot produce the evidence being sought, and why the search warrant represents the best and least intrusive method to secure the evidence

### 6) RISK ASSESSMENT IN CI ENFORCEMENT OPERATIONS

☐ High ☐ Medium ☒ Low
(If there are multiple sites, state level for each in synopsis section)
Attach Risk Assessment Guide(s)

### 7) RISK ASSESSMENT – NON CI WARRANTS

A. How do you rate the physical risk factors of this warrant?
☐ High ☐ Medium ☐ Low
(Explain in detail if High)

B. Explain what equipment and attire will be used:

C. How many CI agents will participate and what are their roles in the enforcement action.

D. List other agencies participating, and agent number
1.
2.
3.

| Enforcement Action Review Form | |
|---|---|
| **Synopsis of the Case** | |
| (Give a brief description of the case, any unusual circumstances, and the role of CI in the enforcement action.) ☒ Attachment See Attached | |

| Additional Explanation Section (Include all information by item number from the first page) | |
|---|---|
| **Explanation of Items** | |
| Item # | |
| Item # | |
| Item # | |
| Item # | |

**CI Tax and Tax Related Warrants** ☒ Attachment

A) Significance Evaluation  See Attached

B) Intrusiveness Evaluation  See Attached

**Review/Approval Section**

| Level | Signature | Date |
|---|---|---|
| Reviewed by: Supervisory Special Agent | *Kathy A. Enstrom* | 04/09/2010 |
| Reviewed/Approved by: Assistant Special Agent in Charge | *Joan Tatoni* | 04/09/2010 |
| Approved by: Special Agent In Charge | [signature] | 04/09/2010 |
| Concurrence*: Director, Field Operations | ✓ | |

*The Director, Field Operations concurrence is required for all enforcement actions involving "sensitive investigations." A "sensitive investigation" is defined as an investigation that involves one of the following: a currently serving elected federal official; a currently serving Article III judge; a currently serving high-level Executive Branch official; a currently serving elected statewide official; a currently serving member of the highest court of the state; a mayor currently serving a population of 250,000 or more; perjury in the U.S. Tax Court; an exempt organization.

| Form 13739 (10-2005) | Cat.#47325A | Page 2 of 4 | Department of Treasury-Internal Revenue Service |

Continued ... Enforcement Action Review Form

### Synopsis of the Case

NOVA Benefit Plans is a company located in Simsbury, CT. Per its brochure, the company offers comprehensive welfare benefit plans – with plans offering single or multiple benefits, ranging from sickness & accident to long term care and life coverage.

NOVA Benefit Plans was incorporated in 2004 in the state of Delaware. Numerous companies related to NOVA have also been identified, including Benistar, Benefit Plan Advisors, and US Benefits Group. It is believed that all of the companies are run by the same individuals and that the head of these companies is Wayne Bursey.

419 Plans, or Welfare Benefit Plans, are non-qualified plans which businesses can establish to compensate employees in the event of situations such as sickness, disability, and/or disfigurement. Due to the fact that the plans are non-qualified, as opposed to a qualified plan like a 401K, there are no funding limits for the Plan and employers do not have to fund the plan for all employees. Employers can be selective and fund the Plan for as few as one or two employees. Money that is contributed to the plans can be written off by the business as an expense in the year that the contribution is made. NOVA Plans sells its 419 Plans as "10 or more employer plans", meaning that purportedly at least 10 employers contribute to the same plan which is then considered a single plan. If an employer is invested in a 10 or more employer plan, the IRS allows the business to expense an unlimited contribution amount.

The funding of a 419 plan works as follows:
- A business signs up for the 419 Plan and sends a contribution to a trust administered by NOVA.
- The business then claims an expense for the full amount of the contribution.
- The trust, for its part, purchases an annuity or life insurance policy from an insurance company with the covered employee as the beneficiary.

If the plan is administered properly, beneficiaries of the 419 Plans are only able to receive a distribution by filing a valid claim for a sickness, disability, or disfigurement. Per IRS regulations, if a valid claim is approved, the beneficiary receives a distribution from the plan, usually tax free.

Information received from a reliable cooperating witness (CW), indicates that NOVA Benefit Plans is promoting and administering abusive 419 Plans. The CW is an independent broker who sold NOVA 419 Plans to numerous clients in the Milwaukee, WI area. The CW has been selling 419 and 412i Plans through NOVA and their predecessor Benistar since 2002. The CW said that 412i plans were similar to 419 plans; however in 2005, IRS rules changed and 412i plans became less attractive compared to 419 Plans. The CW provided information on 14 clients who he assisted in setting up NOVA and/or Benistar 419 Plans. The 14 Plans had contributions totaling well over $8 million.

Per the CW, NOVA knowingly administers their 419 Plans in a way that allows clients to use the plans as abusive tax shelters. The CW explained that he sold the 419 Plans to his clients as a disability plan with the option to get money out of the plan tax free. NOVA is allowing beneficiaries to abuse the Plans in at least two ways:

- First, per the CW, NOVA approves just about any claim that is filed by a beneficiary no matter how frivolous. For example, one of the CW's clients filed a claim for having a mole removed that left a small scar. NOVA approved the claim and is currently paying out the full contribution amount, less fees, over 60 months. The CW has had conversations with Wayne Bursey where Bursey said that if a beneficiary wants to get money out of the plan, NOVA encourages them to file a claim because they have made it so easy for a claim to be approved.

- Secondly, NOVA allows businesses to terminate their 419 Plans. If a business terminates the plan, NOVA gives the beneficiary the option of purchasing the Plan for 10% of its cash value. Once the beneficiary buys out the plan, they receive a 1099 from the insurance company that held the annuity. The 1099 will reflect the basis of the original purchase amount; however that is not the proper basis for the beneficiary. The beneficiary should have no basis in the annuity since the business, not the beneficiary, made the contribution. Due to the incorrect basis, the taxpayer is told that they owe little or no taxes. The CW said that NOVA knows that 1099's issued to the beneficiary by the insurance company are incorrect.

Of the 14 plans set up by the CW, eight plans, totaling well over $4 million in contributions, have been terminated and cashed out. In addition, multiple claims totaling approximately $1 million have been approved.

Due to the ease of getting money out of the plans virtually tax free, by filing a claim or terminating, the plans are being sold as abusive tax shelters.

Continued ... Enforcement Action Review Form

The fact that NOVA's 419 Plans qualify for the 10 or more employer exemption is also in question. In a 10 or more employer plan, the contributions of all of the employers are supposed to be pooled together and accounted for as one plan. However, NOVA appears to be treating each employer separately. For example, NOVA purchases an annuity for each individual beneficiary. If the beneficiary files a claim or terminates the plan they are only entitled to what they contributed.

This investigation utilized a Three Contact Operation and also a Group II Undercover Operation. The undercover contacts confirmed the CW's allegations regarding NOVA. The end result of the abusive 419 plans is that individuals are able to circumvent IRS regulations and obtain money from businesses that they have an interest in virtually tax free. By using a 419A(f)(6) plan, a business can contribute money, which is deductible as a business expense, to the plan on behalf of a covered employee. Then, with the assistance of NOVA, at a later date the covered employee is able to obtain the money contributed to the plan tax free either through a ginned-up disability (disability payments are generally not includable in income under Section 104 of the Internal Revenue Code) or through a misstated basis when the 419A(f)(6) plan is terminated. In essence, NOVA is providing a blue print, and the means, for business owners and individuals to underpay their taxes.

A) Significance Evaluation

Per contacts with Neumann, NOVA has thousands of clients and over a billion dollars invested for those clients. The CW provided information that he alone has 14 clients who have invested over $8 million in the 419 Plans. Due to the statements of Neumann and the information provided by the CW, the tax loss associated with NOVA's clients is anticipated to be very significant.

SB/SE has identified some 419 Plans as Abusive Tax Avoidance Transactions. Per their website, promoters are offering plans that purport to provide employee pre-retirement or post-retirement benefits, such as death, medical, dental, life insurance, disability and severance pay. Promoters claim that employer contributions to these plans are tax-deductible when paid, relying on the use of single employer plans under IRC Section 419(e), the 10 or more employer exception in IRC Section 419A(f)(6) or the Bargaining Agreement exception in IRC 419A(f)(5). Arrangements providing welfare benefits may have tax consequences different than what the promoter claims. Depending on the facts and circumstances, a particular arrangement could instead be providing dividends to the owners of a business that are includible in the owners' income and not deductible by the business. The arrangement could also be subject to the split dollar regulations or be a nonqualified deferred compensation plan.

LMSB has an open Promoter Case, or "6700 investigation", on Wayne Bursey and NOVA. Currently, the case is stalled due to the fact that Bursey has not complied with a summons issued for his testimony. LMSB is currently pursuing summons enforcement activities in order to force Bursey to comply. LMSB believes that the summons enforcement process could take several months.

Pursuant to an ongoing project, LMSB is currently disallowing NOVA 419 Plan contributions for companies that expense the contributions. The contributions may also be includable as income on the personal tax returns of beneficiaries in the year that the contributions are made.

The LMSB case on NOVA is related to an earlier investigation of a company by the name of Benistar. NOVA was created by the operators of Benistar. The CW believes that NOVA may have been created because the IRS was having issues with Benistar's 419 Plans.

B) Intrusiveness Evaluation

It is unlikely that records, including customer lists, pertinent to the investigation would be obtained through the use of a subpoena. LMSB currently has an open 6700 investigation on NOVA and Wayne Bursey. The case is stalled due to the fact that NOVA and Wayne Bursey have not complied with an IRS summons for documents and testimony. Due to the noncompliance with the summons, it is anticipated that a subpoena would garner the same result. Further, based on the investigation to date, it appears that NOVA makes a living out of impeding the IRS. Therefore, NOVA's cooperation with a criminal investigation is highly unlikely.