# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA ) | CRIMINAL NO. 3:13CR226(RNC) |
| ) | |
| v. ) | |
| ) | |
| DANIEL E. CARPENTER ) | |
| ) | NOVEMBER 10, 2017 |

## MR. CARPENTER'S MOTION FOR RECONSIDERATION OF THE COURT'S RULING OF NOVEMBER 6, 2017 <u>BASED ON THE EX POST FACTO CLAUS</u>

On November 6, 2017, this Court summarily denied Mr. Carpenter's Motion for a Judgment of Acquittal pursuant to Rule 29 (Doc. 228), Motion for a New Trial pursuant to Rule 33 (Doc. 230), Motion for Reconsideration pursuant to Rule 60(b) of this Court's Order on the Motion to Suppress Evidence (Doc. 243), Motion for Reconsideration and to Vacate this Court's Decision and Findings of Fact of June 6, 2016 (Doc. 247), and his Motion for Personal Access and Retention of Discovery Material (Doc. 258). Mr. Carpenter respectfully requests that this Court reconsider its decision as to the denial of his Rule 29 Judgment of Acquittal based on the constitutional prohibitions of the Ex Post Facto Clause as it is believed no one else has ever been charged in the United States with the crime of lying on an insurance application to induce a carrier to issue a policy that it perhaps may not have issued if it believed it was a so-called "STOLI" policy before the indictment in October 2012 of the defendants in *United States v. Binday*, 804 F.3d 558 (2d Cir. 2015). It is believed Mr. Carpenter is the first person to have ever gone to trial on those specific charges in the District of Connecticut since the Constitution was

**ORAL ARGUMENT REQUESTED**

adopted in 1787. It is Mr. Carpenter's contention that the judicial expansion of the right to control theory of mail and wire fraud is a classic violation of the Constitution's prohibition against someone being prosecuted under an unwarranted expansion of an ambiguous statute as applied to Mr. Carpenter's case.

Therefore, pursuant to the District of Connecticut Local Rule 7(c), Mr. Carpenter submits this Motion for Reconsideration because there is no support in the Nation's jurisprudence for this unjustified expansion of the Right to Control theory of fraud. Mr. Carpenter respectfully asks the Court to reconsider its denial of Mr. Carpenter's Rule 29 Judgment of Acquittal based on the fact that the Court has overlooked the *Ex Post Facto* Clause of the United States Constitution, and the recently-decided Second Circuit cases of *United States v. Countrywide*, 822 F.3d 650 (2d Cir. 2016) and *United States v. Finazzo*, 850 F.3d 94 (2d Cir. 2017), which it is submitted are diametrically contrary to the Court's decision in Mr. Carpenter's case.

## I. PRELIMINARY STATEMENT

Obviously, Mr. Carpenter is distraught over the fact the government used a Motion for Reconsideration and pushed so hard for a new trial in *United States v. Lucarelli*, 490 F.Supp.2d 295 (D. Conn. 2007) after Judge Arterton granted Lucarelli's Rule 29 Judgment of Acquittal, but fails to recognize any "manifest injustice" in Mr. Carpenter's case that would require a new trial, despite the fact that no one else in the District of Connecticut has ever been indicted for lying on an insurance application to induce a carrier to issue a policy that it perhaps may not have issued if it believed it was a "STOLI" policy. In *Lucarelli*, for its motion for reconsideration, the government relied

upon an obscure case from the Eighth Circuit, which was decided after the defendant's trial and arguments for the Rule 29, which Judge Arterton analyzed and found to be inapplicable, despite the fact it was not controlling law. *See Lucarelli* at 302, n.3. To the contrary, Mr. Carpenter has put forward *Countrywide, Finazzo,* and *Mittelstaedt* from the Second Circuit, plus the "famous" cases of *United States v. Takhalov*, 827 F.3d 1307 (11th Cir. 2016) and *United States v. Weimert*, 819 F.3d 351 (7th Cir. 2016), the Supreme Court cases of *Shaw v. United States*, 137 S.Ct. 462 (2016) and *Honeycutt v. United States*, 137 S.Ct. 1626 (2017), as well as the unanimous decision in *Skilling* that the government continues to disregard in the "mirror image" of fraud based on Second Circuit precedents like *United States v. Starr*, 816 F.2d 94 (2d Cir. 1987). *See Skilling v. United States*, 561 U.S. 358, 400 (2010).

## II. LEGAL STANDARD

"Because no rule of criminal procedure addresses motions for reconsideration, courts typically adopt the standards applied to such motions in civil cases....Reconsideration is appropriate only "if there has been an intervening change in controlling law, there is new evidence, or a need is shown to correct a clear error of law or to prevent manifest injustice." *United States v. Sanchez*, 35 F.3d 673, 677 (2d Cir. 1994)." *Lucarelli*, 490 F.Supp.2d at 296-97.

Federal Rule of Criminal Procedure 57(b), which is entitled "Procedure When There Is No Controlling Law", provides in part that "[a] judge may regulate practice in any manner consistent with federal law, these rules, and the local rules of the district." Fed.R.Crim.P. 57(b). "Where the Rules of Criminal Procedure do not speak specifically

3

to a matter, a court conducting a criminal case is permitted to draw from and mirror a practice that is sanctioned by the Federal Rules of Civil Procedure." *Morrison* at 252, *quoting United States v. James*, 2007 WL 914242, at *3 (E.D.N.Y. Mar. 21, 2007). "Thus, when deciding motions for reconsideration in criminal matters, courts in this district have resolved such motions according to the same principles that apply in the civil context." *James* at *3. *See, also, United States v. Fiorelli*, 337 F.3d 282, 286 (3d Cir. 2003) ("motions for reconsideration may be filed in criminal cases"); and *Clark*, 984 F.2d at 33-34. The Local Criminal Rules in the District of Connecticut specifically provide for Motions for Reconsideration pursuant to Rule 7(c).

### III. THIS COURT SHOULD GRANT MR. CARPENTER'S MOTION FOR RECONSIDERATION BASED ON THE VIOLATIONS OF THE EX POST FACTO CLAUSE

In *United States v. Kilkenny*, 493 F.3d 122 (2d Cir. 2007), the Second Circuit's opinion rests on an application of the provision in Article I of the United States Constitution that prohibits Congress from passing any "*Ex Post Facto* Law." *See* U.S. Const. art. I, §9, cl. 3. For that reason, it is helpful to state the Second Circuit's understanding of what an "*Ex Post Facto*" law means in *Kilkenny*:

> It is hard to improve on the definition of the *Ex Post Facto* Clause set out in an early Supreme Court case, *Calder v. Bull*, 3 U.S. (3 Dall.) 386 (1798). In that case Justice Chase described the following kind of legislation as prohibited:
>
> 1st. Every law that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action.
>
> 2d. Every law that aggravates a crime, or makes it greater than it was, when committed.

4

> 3d. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed.
>
> 4th. Every law that alters the legal rules of evidence, and receives less, or different testimony, than the law required at the time of the commission of the offence, in order to convict the offender. *See Kilkenny* at 125, *citing Calder v. Bull* at 390.

The main reason for the *ex post facto* clause's adoption in the Constitution was to restrain Congress, **or the Judiciary**, from enacting "arbitrary or vindictive" laws after the conduct was committed. *See, e.g., United States v. Marks*, 430 U.S. 188 (1977), *citing Rabe v. Washington*, 405 U.S. 313 (1972). The Clause also ensures that before being prosecuted, individuals must be given "fair warning" of a law's effect.

Blackstone illustrates this second purpose of the *Ex Post Facto* Clause, providing fair warning, by looking to the policies of the Roman despot Caligula:

> "Caligula had laws written in fine print and hung them high up on pillars so that they were not available to nor readable by the Roman citizens affected by such laws. *Id.* They provided no fair warning and so, like laws made *ex post facto,* they would not have provided citizens fair notice to refrain from the criminalized conduct. *Sash v. Zenk,* 439 F.3d 61, 64 (2d Cir. 2006) (notice problems arise when retrospective changes are made in laws upon which citizens are entitled to rely)." *Kilkenny* at 126.

Thus, the *Ex Post Facto* Clause enshrines in the Constitution a basic presumption of our law, that is, legislation in the criminal law "is not to be applied retroactively." *Kilkenny* at 126, *citing Johnson v. United States,* 529 U.S. 694, 701 (2000).

Based on the prohibition against *Ex Post Facto* judicial determinations and the need to provide "fair warning" as to what is criminal under the law before someone should be criminally prosecuted, the Rule of Lenity should be applied any time that the Court finds, as should be found in this case, that a defendant possibly lacked notice that

5

his conduct was subject to criminal sanction. *See Liparota v. United States*, 471 U.S. 419, 427 (1985) (The rule of lenity "ensures that criminal statutes will provide fair warning concerning conduct rendered illegal and strikes the appropriate balance between legislature, the prosecutor, and the court in defining criminal liability."); *Bouie v. City of Columbia*, 378 U.S. 347, 350-51 (1964) (Due Process requires that a criminal statute "give fair warning of the conduct that makes it a crime."). "[B]efore a man can be punished as a criminal under the Federal law his case must be 'plainly and unmistakably' within the provisions of some statute." *United States v. Plaza Health*, 3 F.3d 643, 649 (2d Cir. 1993), *quoting United States v. Gradwell*, 243 U.S. 476, 485 (1917).

The "Fair Warning" requirement mandates that "no man shall be held criminally responsible for **conduct which he could not reasonably understand to be proscribed.**" *United States v. Lanier*, 520 U.S. 259, 260-61 (1987)(emphasis added). This principle is reflected in at least two tools of statutory construction. First, the "rule of lenity ensures fair warning by so resolving ambiguity in a criminal statute as to apply it only to conduct clearly covered." *Lanier* at 266. Second, "due process bars courts from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope." *Id.*

While the *Ex Post Facto* Clause (Article I, Sections 9 and 10) is generally thought of as a limitation on the power of the legislature to create new laws, the principal on which the *Ex Post Facto* Clause is based is "the notion that persons have a right to fair warning of that conduct which will give rise to criminal penalties is fundamental to our concept of Constitutional liberty." *See Marks, citing United States v. Harriss*, 347 U.S.

6

612, 617 (1954); *Lanzetta v. New Jersey,* 306 U.S. 451, 453 (1939). As such, the right of the Due Process Clause of the Fifth Amendment protects the individual from such judicial expansion of statutes and judicial action that the legislature would be prohibited from doing under the *Ex Post Facto* Clause.

Similarly, in *Rabe,* the Supreme Court reversed a conviction under a state obscenity law because it rested on an unforeseeable judicial construction of the statute. The Supreme Court in reversing the conviction in *Marks,* discussed the judicial expansion in *Rabe,* and stressed that "reversal was mandated because affected citizens lacked fair notice that the statute would be thus applied." *See Marks* at 192. The Supreme Court's decisions in both *Rabe* and *Marks* show that Mr. Carpenter's prosecution violated the Constitution's prohibition against *Ex Post Facto* laws, even if created by a judicial expansion of the statute as was done in *Binday*. The *Ex Post Facto* Clause prohibits any prosecution by the government for conduct that was innocent when performed, and it is based on the principal that "persons have a right to fair warning of that conduct which will give rise to criminal penalties." *See United States v. Rosengarten,* 857 F.2d 76 (2d Cir. 1988), *quoting Marks,* 430 U.S. at 191. *See, also, Casillas v. Scully,* 769 F.2d 60, 65 (2d Cir. 1985), which reiterated the Supreme Court's conclusion in *Bouie*.

In fact, the Supreme Court in *Marks* cites another pornography case *Hamling v. United States,* 418 U.S. 87, 102 (1974), for the proposition that any judicial expansion of a statute is prohibited, whereas any judicial narrowing of a statute by the Supreme Court must be applied on a retroactive basis for the benefit of the defendant. Because the obscenity standards in *Miller v. California,* 413 U.S. 15 (1973) both helped and hurt the

7

defendants in *Marks,* the Supreme Court had to decide what was to be applied retroactively and what was not. The Supreme Court cited *Hamling* in *Marks* for the proposition that "any constitutional principal enunciated in *Miller* which would serve to benefit petitioners must be applied in this case," while any retroactive judicial expansion of the interpretation of a statute is constitutionally prohibited. *See Marks* at 197, *citing Hamling* at 102.

Therefore, the Supreme Court's rulings in the obscenity cases make clear that judicial expansion of a statute by the courts violates the *Ex Post Facto* Clause and any positive pronouncement by the Supreme Court or the Second Circuit that benefits a defendant must be used retroactively for Mr. Carpenter's benefit. A clear example of this, is the Second Circuit's decision in *Countrywide,* which came after Mr. Carpenter's indictment and trial, and makes clear there can be no mail and wire fraud in the performance or non-performance of a contract between private parties. *See United States v. Countrywide,* 822 F.3d 650 (2d Cir. 2016). Just as *Countrywide* narrowed the definition of mail and wire fraud in contractual relations, and the Supreme Court's decision in cases like *Liparota* and *Morissette* required clear evil intent, and even *Skilling* narrowed the reach of the fraud statutes, that narrowing should inure to Mr. Carpenter's benefit.

There is no case anywhere in any circuit where someone was indicted for making misrepresentations concerning the future potential sale of an insurance policy or, even worse, that the policy was for "estate planning purposes." If someone lies on an insurance policy, the carrier has the civil remedy to rescind the policy and keep the

insurance policy, the carrier has the civil remedy to rescind the policy and keep the premiums if fraud was involved. Clearly, Mr. Carpenter had no "fair warning," and this is a judicial violation of the *Ex Post Facto* Clause because none of the conduct in this case is even remotely similar to the conduct for a mail and wire fraud prosecution as described to Congress by Charles Doyle in his Congressional Research Service treatise of 2011, which is well after the applications in this case were filled out. Whereas the government is required to prove all **five** of these elements beyond a reasonable doubt, Mr. Carpenter maintains that **none** of the five have been proven at all, much less beyond a reasonable doubt.

Therefore, because of this clear violation of the *Ex Post Facto* Clause, and the lack of "fair warning" in this case, the Court should grant Mr. Carpenter's Motion for Reconsideration.

## CONCLUSION

For those reasons, Mr. Carpenter respectfully asks that his Motion for Reconsideration be granted and the Court vacate its rulings of November 6, 2017 in the interests of justice, and grant Mr. Carpenter's Judgment of Acquittal based on the specific constitutional protections provided to all American Citizens by the *Ex Post Facto* Clause.

**ORAL ARGUMENT REQUESTED**

Wherefore, it is so moved.

**Respectfully submitted,**
Defendant, Daniel Carpenter

By _____
Richard Brown, Esq.
Brown Paindiris & Scott, LLP
100 Pearl Street, 2nd Floor
Hartford, CT 06103
Tel 860.522.3343
Fax 860.522.2490
Fed Bar No. ct00009
rbrown@bpslawyers.com

## CERTIFICATION

This is to certify that on November 10, 2017, a copy of the foregoing Motion was served by email to all parties by operation of the Court's electronic filing system or by email on anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

A.U.S.A. David Novick
Office of U.S. Attorney
157 Church Street, 25th Floor
New Haven, CT 06510

A.U.S.A. Neeraj Patel
Office of U.S. Attorney
157 Church Street, 25th Floor
New Haven, CT 06510

Richard Brown, Esq.
Brown Paindiris & Scott, LLP
100 Pearl Street, 2nd Floor
Hartford, CT 06103
Tel 860.522.3343
Fax 860.522.2490
Fed Bar No. ct00009